**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DEVELOPERS SURETY AND INDEMNITY COMPANY,** | * |
| Plaintiff | * |
| v. | Case No.: RWT 10cv1224 |
| **RESURRECTION BAPTIST CHURCH, et al.** | * |
| Defendants. | * |

## MEMORANDUM OPINION

In late 2006, AHL Development ("AHL") and Resurrection Baptist Church ("Resurrection Baptist"), entered into a contract under which AHL agreed to construct a worship facility for Resurrection Baptist at 900 Ednor Road, Silver Spring, Maryland for $994,000. Compl. ¶ 9. Around the same time, Resurrection Baptist and AHL entered into a separate contract under which AHL agreed to perform preliminary site development work for the Silver Spring facility for $429,000. *Id.* ¶ 7.

The parties modified the contract for site development work ("Site Development Contract") on or about March 13, 2008. Pursuant to the modification, AHL agreed to do additional site development work and the contract price was raised to $473,800. *Id.* ¶ 8. On or about May 2, 2008, the contract to build the worship facility ("Building Contract") was modified to increase the size of the facility. *Id.* ¶ 10. The amount AHL would be paid for the facility's construction was increased to $1,269,000. *Id.* After both the Site Development and Construction Contracts had been amended, AHL entered into a general indemnity agreement with Developers Surety and Indemnity Company ("Developers Surety") under which Developers

Surety agreed to act as surety for AHL, issuing payment and performance bonds securing AHL's performance under the Building Contract. *Id.* ¶¶ 11-13. The bonds were issued soon thereafter, and named Resurrection Baptist and PNC Bank as co-obligees. *Id.* ¶ 14.

In February 2010, Resurrection Baptist declared AHL to be in default. *Id.* ¶ 21. As of the date of the default, the building was only 80% complete and there were insufficient contract funds to complete the project. *Id.* ¶ 24. Resurrection Baptist made demand against Developers Surety's performance bond to complete the facility's construction. *Id.* ¶ 21. Developers Surety refused this demand, asserting that Resurrection Baptist and PNC Bank materially deviated from the payment application process required under the Building Contract and made payments to AHL and its vendors without differentiating between the work that was being performed under the Building and Site Development Contracts. *Id.* ¶¶ 17-19. Developers Surety also claimed that Resurrection Baptist and PNC Bank failed to withhold a percentage of payments made to AHL in order to protect themselves in the event that AHL defaulted. *Id.* ¶ 20.

On May 14, 2010, Developers Surety initiated this action naming Resurrection Baptist and PNC Bank as defendants. Developers Surety claims that Resurrection Baptist and PNC Bank are liable for breach of contract and it seeks a declaratory judgment that its obligations under the performance and payment bonds are discharged. *Id.* at ¶¶ 44-45.

PNC Bank and Resurrection Baptist answered Developers Surety's complaint on August 2, 2010 and September 16, 2010 respectively. ECF Nos. 7 & 12. Resurrection Baptist filed a motion to stay this litigation and to compel mediation and arbitration simultaneously with its Answer. ECF No. 15. PNC Bank later joined in that motion. ECF No. 24. Resurrection Baptist and PNC Bank argue that Developers Surety is contractually obligated to mediate and arbitrate its claims as a condition precedent to maintaining this suit. Developers Surety opposes any stay

of this action and argues that it is not bound by the terms of the Building Contract which mandate mediation and arbitration. For the reasons that follow, this action will be stayed pending the completion of mediation and arbitration.

## THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act (the "Act"), 9 U.S.C. § 2, states that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Act further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

## DISCUSSION

### I.    ARBITRABILITY

Whether this action must be stayed pending mediation and arbitration turns on the interpretation of the contracts entered into by Developers Surety, Resurrection Baptist and PNC Bank. In Maryland, contract interpretation is a question of law and contracts must be interpreted

objectively. *Ambling Mgmt. Co. v. University View Partners*, LLC, 581 F. Supp. 2d 706, 712 (D. Md. 2008).

Developers Surety's claims against Resurrection Baptist and PNC Bank are based upon their alleged breach of the terms of the Building Contract. In addition to seeking damages for breach of contract, Developers Surety seeks a declaratory judgment that as a result of those alleged breaches, it has no further obligations under the payment and performance bonds it issued to secure AHL's performance. Compl. at 7-10. Whether Developers Surety's claims must be stayed pending arbitration therefore depends upon whether there is language in the Building Contract and the payment and performance bonds subjecting disputes between Developers Surety, Resurrection Baptist and PNC Bank to mandatory mediation and arbitration.

Although the payment and performance bonds contain no language compelling mediation and arbitration, they contain a clause incorporating the Building Contract between Resurrection Baptist and AHL by reference. The performance bond provides:

> "Whereas Contractor [AHL] has by written agreement dated May 2, 2008, entered into a contract with Owner [Resurrection Baptist] for CONSTRUCT NEW FACILITY, 900 EDNOR ROAD, SILVER SPRING, MD 20905, in accordance with Drawing and Specifications prepared by [blank] *which contract is by reference made a part hereof, and is hereinafter referred to as the Contract*." (emphasis added). Compl. Ex. F. ECF No. 1-6 at 2.

The payment bond contains a similar provision. *Id.* Ex. F. ECF No. 1-6 at 5.

The payment and performance bonds therefore incorporate the Building Contract by reference. The Building Contract contains mandatory mediation clauses which provide:

> § 4.5.1 Any claim arising out of or related to the Contract, . . . shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation

4

as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

Compl. Ex. C at 31.  ECF No. 1-3 (emphasis added).

The Building Contract also contains mandatory arbitration clauses which provide:

§ 4.6.1 Any claim arising out of or related to the Contract, . . . shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

§ 4.6.2  Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

Compl. Ex. C, at 31.  ECF No. 1-3.

"An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law, see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, (1983), save upon such grounds as exist at law or in equity for the revocation of *any* contract.  9 U.S.C. § 2."  *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (internal quotations omitted) (emphasis added).   The Federal Arbitration Act "preempts state laws which either directly

contradict federal law or obstruct the realization and execution of Congressional objectives regarding the Act." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446 (4th Cir. 1997).

The First, Second, Fifth, Sixth and Eleventh Circuits and several district courts have held that a surety must arbitrate disputes related to a performance bond where the performance bond specifically incorporated by reference a contract containing an arbitration clause. *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (1st Cir. 1993); *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F. 2d 274, 276 (6th Cir. 1984), *United States Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988); *Compania Espanola de Petroleos v. Nereus Shipping,* 527 F.2d 966, 973 (2d Cir.1975), *overruled on other grounds by United Kingdom of Great Britain and Northern Ireland v. Boeing Co.,* 998 F.2d 68, 71 (2d Cir.1993); *J.S. & H. Const. Co. v. Richmond County Hospital Authority*, 473 F. 2d 212 (5th Cir. 1973); *see Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192 (D.N.J. 1990); *Cianbro Corp. v. Empresa Nacional de Ingenieria,* 697 F.Supp. 15 (D.Me.1988); *O'Connor and Co. v. Insurance Co. of North America,* 697 F. Supp. 563 (D. Mass. 1988). The Eighth Circuit is the only federal circuit to diverge from this view. *Mandaree Public School Dist. #36*, 503 F. 3d 708 (8th Cir. 2007).

In *Gilbane*, a case with facts similar to those presented here, the First Circuit held that a surety's counterclaim against a general contractor must be stayed pending arbitration. *Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 389 (1st Cir. 1993). Commercial Union Insurance Company ("Commercial Union"), the surety, issued performance bonds to secure the performance of Thames Valley Steel Corporation ("TVS"), a structural steel subcontractor, which had entered thirteen subcontracts with Gilbane, the general contractor. *Id.* at 386-87. TVS eventually defaulted on its obligations under the subcontracts and a dispute

arose between Gilbane and Commercial Union regarding Commercial Union's obligations as surety. *Id.* at 387. Commercial Union filed a civil action against Gilbane alleging that Gilbane wrongfully withheld contract balances owed Commercial Union in connection with the completion of twelve of the thirteen construction projects. *Id.* Gilbane filed a two-count counterclaim against Commercial Union alleging breach of contract and unfair trade and claim settlement practices. *Id.* Commercial Union filed a reply denying liability, amended its complaint to add a count alleging Gilbane engaged in unfair and deceptive trade practices and filed two third-party complaints against other general contractors. *Id.* Later, Commercial Union moved to stay Gilbane's counterclaim pending arbitration, arguing that the counterclaim must be stayed because Gilbane and Commercial Union were bound by an express arbitration agreement. *Id.* Gilbane opposed the motion. *Id.*

The court noted the "strong federal policy favoring arbitration agreements, a policy which requires [the court] to resolve any doubts concerning arbitrability in favor of arbitration." *Id.* at 388. (internal quotations omitted). The court then held that even though the performance bond issued by Commercial Union did not contain an arbitration provision, Gilbane was required to arbitrate its counterclaim because the performance bond incorporated the TVS-Gilbane subcontract by reference, the subcontract incorporated the prime contract by reference and the prime contract contained an arbitration clause. *Id.* at 389. The court reasoned that the performance bond's explicit incorporation of the subcontract which explicitly incorporated the prime contract justified compelling the surety to arbitrate its claims.

Like the performance bond issued by Commercial Union to secure TVS's performance in *Gilbane*, the performance bond issued by Developers Surety to secure AHL's performance explicitly incorporates a construction contract that contains a mandatory arbitration provision.

The primary distinction between the facts presented in *Gilbane* and the facts presented in this case is that the performance bond at issue in this case *directly* incorporates the contract containing the arbitration provision, whereas in *Gilbane* the performance bond incorporated a subcontract which incorporated a prime contract which contained a mandatory arbitration clause. "Where two levels of incorporation by reference still result in a surety's duty to arbitrate, incorporating by reference an arbitration clause directly should certainly compel the surety's participation." *Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia, S.A.*, 697 F. Supp. 15, 18 (D. Me. 1988). The First Circuit's reasoning in *Gilbane* leads the court to conclude that Developers Surety's incorporation by reference of the Building Contract into the performance bond incorporates the mandatory arbitration clause contained therein. Developers Surety must arbitrate its claims against Resurrection Baptist and PNC Bank.

The contractual language analyzed in *Gilbane* closely parallels the language used by the parties in this case. The arbitration provisions in the Building Contract are similar to the arbitration provision analyzed by the *Gilbane* court. *Compare*, *id.* at 388 ("All claims, disputes and other matters in question arising out of, or relating to this Agreement or the breach thereof, . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.") *with* AHL-Resurrection Baptist Building Contract §§ 4.6.1, 4.6.2. ("Any claim arising out of or related to the Contract, . . . shall . . . be subject to arbitration . . . Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.") Similarly, the performance bond issued by Developers Surety to secure the performance of AHL and the performance bond issued by

Commercial Union in *Gilbane* use similar language to incorporate the underlying contract—both bonds state that the underlying construction contract is "made a part hereof." *Gilbane* therefore provides a close analogue to this case and supports the court's conclusion that Developers Surety is bound to arbitrate its claims. The First Circuit's reasoning and conclusion are widely shared among the federal circuits. *See, Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F. 2d 274, 276 (6th Cir. 1984), *United States Fidelity & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988).

The only federal circuit to diverge from the general consensus is the Eighth Circuit.[1] In *Liberty Mutual Insurance Company v. Mandaree Public School District # 36*, the Eighth Circuit held that a performance bond's incorporation by reference of a construction contract containing a provision that obligated the owner and general contractor to arbitrate disputes did not bind the surety. *Liberty Mutual Ins. Co. v. Mandaree Public School Dist. # 36*, 503 F. 3d 709, 711 (8th Cir. 2007). In *Mandaree*, however, the performance bond expressly provided that "[a]ny proceeding, legal or equitable, under this Bond *may* be instituted in any court of competent jurisdiction [where] the work is located . . . within two years after the Surety . . . fails to perform its obligations under this Bond." *Id.* at 710 (emphasis added). The Eighth Circuit held that this language demonstrated that the surety, Liberty Mutual and the owner, Mandaree,

---

[1] Plaintiff relies heavily on a Maryland Court of Appeals case, *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.*, 695 A. 2d 153 (Md. 1997), in arguing that the performance bond's incorporation by reference of the Building Contract does not incorporate the arbitration clause and bind the surety. Pl.'s Opp'n at 2-4. The Supreme Court has clearly stated that the Federal Arbitration Act "create[s] a body of federal substantive law of arbitrability" which preempts "any state substantive or procedural policies" that contradict the "liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Therefore federal substantive law, rather than state law, controls the court's interpretation of the Building Contract and Developers Surety's performance bond. The Fourth Circuit has followed the Supreme Court's direction, holding that the Federal Arbitration Act "preempts state laws which either directly contradict federal law *or obstruct the realization and execution of Congressional objectives* regarding the Act." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446 (4th Cir. 1997) (emphasis added). To the extent that *Scarlett Harbor*'s holding reflected a hostility to the enforcement of arbitration provisions incorporated by reference into other agreements, this Court must reject that holding and follow the substantial body of federal case law holding that such arbitration provisions are enforceable against a surety which has incorporated those provisions into a performance bond.

"contemplat[ed] that disputes [would] be resolved in court" and therefore compelling the surety to arbitrate would be inconsistent with the intention of the parties. *Id.* at 711.

Developers Surety argues that the performance bond it issued to secure AHL's performance similarly demonstrates that the parties contemplated resolving any disputes arising under the performance bond in legal proceedings, rather than arbitration. Pl.'s Opp'n at 5. ECF No. 16. However, the language in Developers Surety's performance bond differs materially from that used in the *Mandaree* bond. Unlike the *Mandaree* performance bond, which contained permissive language, the instant performance bond employs restrictive language. It states: "[a]ny suit under this bond *must* be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." Compl., Ex. F at 3. The language in Developers Surety's bond expresses a limitation on the right to bring a suit under the bond, not an affirmation of a party's right sue. Other federal courts have held that language declaring a "statute of limitation" on claims arising under a performance bond does not negate an incorporated arbitration clause. *See Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia, S.A.*, 697 F. Supp. 15, 18 (D. Me. 1988). Absent more clear language indicating the parties' intention to resolve disputes in court, the court will not assume that the limitation on the time by which suit must be filed under the Developers Surety performance bond negates the incorporation of the arbitration clause contained in the Building Contract.

## II.    EQUITABLE ESTOPPEL

Developers Surety is also estopped from refusing to comply with the arbitration clause contained in the Building Contract. The Fourth Circuit has not specifically addressed whether a surety bond's incorporation of a contract containing a mandatory arbitration clause compels a surety to arbitrate claims arising under the incorporated contract. However, the Fourth Circuit

has held in a non-surety context that a nonsignatory to a contract containing an arbitration clause can be required to arbitrate claims if it incorporated that contract by reference. *See International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F. 3d 411, 417-18 (4th Cir. 2000). In *International Paper*, the Fourth Circuit held that "a nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Id.* at 418. The court explained:

> "In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract should be enforced to benefit him. To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."

*Id.* at 419.

Here, Developers Surety asserts claims against Resurrection Baptist and PNC Bank for breach of the Building Contract, but simultaneously seeks to avoid enforcement of the arbitration clause contained in the same contract. Under *International Paper*, Developers Surety is equitably estopped from refusing to arbitrate its disputes with Resurrection Baptist and PNC.

## III. WAIVER

Developers Surety alternatively argues that even this dispute is arbitrable, both Resurrection Baptist and PNC Bank waived their right to compel Developers Surety to arbitrate because of their pretrial participation in this lawsuit. This contention is meritless.

A party waives its right to insist on arbitration only when it "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F. 3d 244, 249 (4th Cir. 2001). While "[d]elay in seeking arbitration is a factor to be considered when determining waiver," *id.* at 250, "the

dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*" *Id.* at 251 (emphasis in original). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." *Id.*

Developers Surety makes no claim that it would be prejudiced by a stay, but asserts that Resurrection Baptist waived its right to insist on arbitration by answering the merits of Developers Surety's claims and asserting a counterclaim. ECF No. 16 at 6. Similarly, it argues that PNC Bank waived its right to insist on arbitration because it answered Developers Surety's complaint, filed a cross-claim, and engaged in some discovery. ECF No. 27 at 3.

As *MicroStrategy* makes clear, absent prejudice to the opposing party, a court will not find waiver where the parties seeking to arbitrate merely answer pleadings and engage in minimal discovery. Developers Surety has not indicated how it will be prejudiced by a stay. Resurrection Baptist filed its motion to compel arbitration contemporaneously with the filing of its answer and affirmative defenses,[2] and PNC Bank joined in that motion soon thereafter. The motion to stay was filed less than six months after the complaint was filed. The parties seeking to compel arbitration did not unreasonably delay requesting a stay of this action. In the absence of any prejudice or delay, the court holds defendants have not waived their right to insist upon arbitration of this dispute.

## CONCLUSION

For the foregoing reasons, the court holds that Developers Surety's claims are subject to the mandatory mediation and arbitration provisions and that neither Resurrection Baptist nor PNC Bank waived its right to arbitrate those claims. Pursuant to the Federal Arbitration Act,

---

[2] The Fourth Defense asserted by Resurrection Baptist was that Plaintiff's claims "are, or may be, barred by failure to satisfy preconditions to suit, including submission to mediation and arbitration as provided by the terms of RBC's contract with Developers' principal, AHL, and incorporated in Developers' performance bond." ECF No. 12 at 6.

Developers Surety's claims must be stayed pending arbitration.  Accordingly, the court will stay this case and direct the parties to mediate and arbitrate all claims related to the Building Contract, the payment and performance bonds consistent with the terms therein.  A separate order follows.


<u>December 1, 2010</u>                    <u>            /s/                    </u>
Date                                        Roger W. Titus
                                            United States District Judge